FILED

06/30/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs March 14, 2017

**STATE OF TENNESSEE v. BRIAN GARWOOD**

**Appeal from the Circuit Court for Grundy County**
No. 5324      Thomas W. Graham, Judge

_____

**No. M2016-01653-CCA-R3-CD**

_____

The Appellant, Brian Garwood, pled guilty in the Grundy County Circuit Court to three counts of forgery and received a total effective sentence of six years in the Tennessee Department of Correction. On appeal, the Appellant challenges the trial court's denial of alternative sentencing, specifically drug court. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

B. Jeffery Harmon (on appeal) and Robert G. Morgan (at trial and on appeal), Jasper, Tennessee, for the Appellant, Brian Garwood.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; J. Michael Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Appellant was indicted on five counts of forgery, five counts of passing a forged instrument, one count of theft of property valued between $1,000 and $10,000, and one count of theft of property valued under $500. On April 11, 2016, the Appellant entered a guilty plea to three counts of forgery, a Class E felony, and the remaining charges were dismissed. At the guilty plea hearing, the State recited the following factual basis for the pleas:

[T]he primary witness[es] in this case would be Marvin and Jacqueline Lawley, [and] also representatives from the Citizens Tri-County Bank. The Lawleys would testify that in the summer of 2014, they gave the [Appellant] some work to do around their home. They knew that he'd had some problems and they were trying to help him out. They knew the [Appellant's] brother and they basically kind of, out of some charity, gave him some work, employment, tried to help him out. They would testify that in August of 2014, they found that a checkbook had been taken from their home, along with several other items. They were notified by Citizens Tri-County Bank that the [Appellant] had passed five checks signing their name, and the checks were written out payable to the [Appellant] in amounts of between 400 and 500 some odd dollars. They would testify that they did not give the [Appellant] permission to take the checks or any of their other property. They also did not give the [Appellant] permission to sign their name to the checks or pass the checks. . . .

The Appellant pled guilty as a Range II, multiple offender and was sentenced pursuant to a plea agreement to two years for each conviction, with the sentences to be served consecutively to each other. The plea agreement provided that the Appellant would acknowledge he violated his probationary sentence for a Bledsoe County aggravated burglary conviction and that the effective six-year sentence would be served consecutively to the four-year aggravated burglary sentence. Finally, the plea agreement provided that the trial court would determine the manner of service of the sentences.

At the sentencing hearing, defense counsel stated that the Appellant had been "evaluated for drug court" and that he would be accepted. The trial court observed that according to the presentence report, the Appellant had prior convictions of aggravated burglary; burglary; theft of property more than $500 but less than $1,000; felony escape; and possession of schedule II drugs. The presentence report also reflected that the Appellant had been granted probation previously and that his probationary sentences had been revoked on four occasions. Additionally, the report reflected that the Appellant committed the instant offenses while on bond for the Bledsoe County case.

The trial court noted Mrs. Lawley's statement in the presentence report that she had trusted the Appellant, that he "had been an honest worker before he got on drugs," and that he had "betrayed" her. The court found that the Appellant had breached a private trust by stealing from Mr. and Mrs. Lawley. The trial court noted that the Appellant's criminal record indicated he "was a professional criminal, because he's been

involved in thefts almost his whole life." The trial court said, "It's just not a good record." The trial court noted the Appellant's four prior probation revocations and found that he likely would reoffend. The court also noted that the Appellant had failed to pay child support. The court stated, "I don't see how you could take somebody with this record and just put them back immediately on probation, so I'm not going to do that." The trial court found that the Appellant should be sentenced to confinement.

The trial court asked defense counsel if the Appellant was arguing that he was eligible for consideration for drug court, and defense counsel responded that the Appellant "didn't have any disqualifying factors involved in his history and he was evaluated." The court observed that the Appellant did not have many drug-related offenses in his criminal history.

The Appellant testified that he had two daughters and two sons. His one-year-old son and his three-year-old son lived with him. The Appellant acknowledged that his criminal history was "not a good one." He said that he had used methamphetamines since he was thirteen years old and that he had also used marijuana and taken pills. He said that he had "never slowed down long enough" to try drug rehabilitation but that he "owe[d] it to [him]self and [his] children to give it a try." The Appellant said that he stopped using drugs in January 2016, that he could pass a drug screen, and that he "finally [had] a clear head."

The Appellant said that he had apologized to the victims. He said, "You know, it really hurt me, because I really loved them people." The Appellant acknowledged that most of his criminal history consisted of burglaries and thefts and explained that he stole in order to support his $300-per-day drug habit. He also earned money by selling drugs and "[p]icking up scrap metal wherever [he] could find it." The Appellant said that he was the sole support for his sons because his fiancée was paid minimum wage and could not support them. The Appellant maintained that he was never asked to submit to a drug test during any of his probationary sentences. The Appellant said that he had spoken with someone from drug court in Franklin County and that they had "approve[d him] to come there."

On cross-examination, the Appellant acknowledged that he was never on probation long enough to be drug tested and that the last time he was on probation, he failed to report to his probation officer. The Appellant also acknowledged that each of his probationary sentences were revoked.

The Appellant said that he had a $200- or $300-per-day drug habit for fifteen or twenty years. The Appellant initially maintained that he had committed one or two burglaries for which he was never charged; however, he later acknowledged that he had

committed five or ten uncharged burglaries. The Appellant said that he also supported his drug habit by borrowing or stealing money from family members.

The Appellant said that he was released from the Grundy County Jail because his "kidneys shut down." Thereafter, he failed to report to court for eight or nine months. The Appellant acknowledged that he owed $16,000 or $17,000 in back child support for his minor daughters. He said that he made $700 per week selling scrap metal, some of which was stolen from "vacant fields and stuff."

The Appellant said that while he was incarcerated, his sons lived with their mother. He said that before his incarceration, he supported his sons.

The Appellant acknowledged that he had been on probation three or four times. He said that he had been in jail ten to twelve times and that while incarcerated, he used drugs he obtained from other inmates. The Appellant said that he had "made up [his] mind" to stop using drugs so his sons would "look up to" him. He acknowledged that he did not have the same relationship with his daughters, explaining, "Their mamas run off with them. Their mamas are needle junkies. They took them from me. I've not seen my daughters in so long." The Appellant said that he was not a "needle junkie" and that he "just smoke[d] and snort[ed]."

After the Appellant testified, the trial court said:

> I don't think there's much basis at this point to waste a drug treatment bed over there. I mean, he's going to be behind bars long enough that he will not have an addiction when he leaves. Of course, if he's not going to try he'll just get back in trouble again, but at any rate, I don't believe this is a good candidate for drug treatment, so I deny that. . . .

On appeal, the Appellant challenges the trial court's denial of alternative sentencing, specifically drug court.

## II. Analysis

This court will review the length, range, or manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing

hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An offender is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The Appellant's sentences meet this requirement. However, the Appellant, as a Range II, multiple offender, is not considered to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6).

Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

The Appellant contends the record demonstrates that he qualified for drug court, that he had been "evaluated and approved" by the drug court, and that the evidence at the hearing reflected he wanted treatment for his methamphetamine addiction. The Appellant maintains that the trial court acknowledged the Appellant's addiction and

abused its discretion by denying his request for placement in drug court. The State responds that the trial court did not abuse its discretion. We agree with the State.

Tennessee Code Annotated section 40-35-102(6)(C) provides that "[i]f a defendant with at least three (3) felony convictions is otherwise eligible, that defendant may still be considered a favorable candidate for any alternative sentencing that is within the jurisdiction of and deemed appropriate by a drug court." Tennessee Code Annotated section 16-22-113 provides:

> Each participant in a drug court treatment program shall:
> (1) Not be a violent offender as defined in § 16-22-103;
> (2) Be substance abusing or chemically dependent, or both; and
> (3) Be willing to participate in a treatment program.

Nevertheless, an offender has no right to be placed in drug court. See Tenn. Code Ann. § 16-22-111.

The trial court found that considering the Appellant's criminal history, commission of an offense while on bond, previous failures to comply with the terms of release, and breach of a private trust, he was not a good candidate for drug treatment. We conclude that the trial court did not abuse its discretion by denying Appellant's request.

### III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE